Dixon & Starkey *vs.* Doe, ex dem. Charles A. Lacoste.

By the statute of this State creditors are, alike with subsequent purchasers, affected by notice of a prior unregistered deed.

Notice is equivalent to registration as to all persons.

Unregistered deeds shall not be avoided in favor of creditors with notice.

Possession is sufficient notice to everybody of the conveyance to, or title of, the occupant.

This was an action of ejectment instituted in the circuit court of Adams county, by the defendant in error, for the recovery of a lot in the city of Natchez.

The cause was tried in the court below on the following agreed facts, viz: " John Dixon conveyed the land in question, being a lot in the city of Natchez, by deed, dated the 13th of September, A. D. 1836, for a full and valuable consideration, to John P. Campbell and his heirs in fee simple.

" Said John P. Campbell conveyed the said lot to James Shirley, for a full and valuable consideration, by deed, dated the 24th of October, A. D. 1836, in fee simple; which deed was recorded in the proper office for the registry of deeds in Adams county, on the 4th of March, 1837.

" By deed, dated the 23d of April, A. D. 1838, James Shirley conveyed part of said lot to Edward Dixon, one of the defendants, for a full and valuable consideration, in fee simple; which deed was regularly recorded in the proper office aforesaid, on the 25th of April, A. D. 1838; and by deed dated —— ——, said Shirley conveyed the residue of said lot to Joseph Starkey, the other of said defendants, in fee simple; which last deed was filed for record in the proper office, as aforesaid, on the 25th of April, A. D. 1838, and duly recorded by the 28th of April, A. D. 1838.

" On the 17th of April, A. D. 1838, Briggs, Lacoste & Co. obtained judgment in the circuit court of Adams county, for the sum of $8,146 $\frac{81}{100}$ upon a bill of exchange given by Dixon to Briggs, Lacoste & Co. on Somers & Alexander, dated 31st Jan-

uary, 1837, and payable twelve months after date, for $8000. Execution was regularly issued on said judgment, and levied on the lot in controversy as the property of John Dixon aforesaid, and the same was sold, after due notice and advertisement of the time and place of sale, under said execution to the said Charles A. Lacoste, plaintiff in this case, and also a member of the firm and one of the plaintiff's in said case of Briggs, Lacoste & Co., against John Dixon aforesaid; and under said sale a regular deed *of conveyance* was executed by the sheriff of Adams county to the said Charles A. Lacoste.

" The deed above first mentioned from John Dixon to John P. Campbell, was mislaid, and on that account not recorded until the 25th of April, A. D. 1838. John P. Campbell took possession of the lot in September, 1836, and remained in possession until he conveyed as above stated to the said Shirley; when the said Shirley took possession, and remained in possession until his sale to the defendants in this case as above stated, who have remained in possession ever since. It was known to the said Charles A. Lacoste, previous to the date of said judgment, that the said John Dixon had conveyed away the said lot as above stated." Upon the facts, thus agreed, the Hon. Charles C. Cage, presiding in the court below, rendered judgment in favor of the defendant in error—to reverse which judgment this writ of error is now prosecuted.

*H. S. Eustis*, for the plaintiffs in error.

The term " creditors," in the statute concerning the recording of conveyances, means creditors having a lien, not creditors at large. *Tate* v. *Leggatt*, 2 Leigh, 99. *Chamberlayne* v. *Temple*, 2 Rand, 384. *Kelso* v. *Blackburne*, 3 Leigh, 399. 2 J. C. R. 144. Lomax Dig. 2 vol. 367.

The defendant in error is before this court in the character of a subsequent purchaser, not in that of a creditor. " A creditor at large, who procures a mortgage of his debtor's property, is not to be regarded under the statute (of frauds) as a creditor, or in the double character of creditor and purchaser, but only as a purchaser." *Tate* v. *Leggatt*, 2 Leigh, 84.

The agreed case admits that the defendant in error, had actual notice at the date of his judgment. Under all those registry acts, in which are incorporated the words "*bona fide* purchasers," or "subsequent purchasers for valuable consideration without notice," it is now the rule of law, in common law courts, in actions of ejectment, that actual notice is equivalent to registration. 4 Dana, R. 458, *Morton* v. *Robaud.*    *Tuttle* v. *Jackson,* 6 Wend. 227.   Lomax Dig. 2 vol. 368.    *Guerraut* v. *Anderson,* 4 Rand. 208.    2 Bibb, 420.    9 Cowan, 121.    The case of *Doe* v. *Alsop,* 5 Barn. & Ald. 142, and the earlier Virginia cases, which may seem to conflict with the foregoing, arose under statutes which did not contain those words.   The Virginia act of assembly was without them.   Subsequent legislation inserted them, and the Virginia act of 1819, is like ours, and the case referred to in 4 Rand, is a decision upon the last act of 1819.   It is true, that case attempts to establish a distinction in the effect of actual notice, between "creditors" and "subsequent purchasers."   The reason given, is that actual notice never caused the defeat of a creditor in courts of equity.   In this statement the Virginia court is greatly in error.   *Le Neve* v. *Le Neve,* 3 Atkins, 646.   *Kiersted* v. *Avery,* 4 Paige, Ch. R. 9.    *Priest* v. *Rice,* 1 Pick. 164.

In the case last cited, Chief Justice Parker directly decides that there is no distinction as to the question of notice between a creditor and a subsequent purchaser.

The Kentucky statute is like ours, and we refer to *Morton* v. *Robaud,* 4 Dana, 258, which is decided in our favor upon a state of facts strictly analogous to the case at bar.

The superior court of chancery of this State, takes the same view of the statute.   See manuscript case, *Walker* v. *Bailey* et al.

The attention of the court is also called to the fact that we hold a derivative title.   Such titles are protected, even where the first conveyance was within the Statute of Frauds.   *Martin* v. *Cowles,* 1 Devereux and Battle, 29.   *Coleman* v. *Cocke,* 6 Rand, 618.    *Gore* v. *Brazier,* 3 Mass. 541.    *Trull* v. *Bigelow,* 16 Mass. 418.   *Bean* v. *Smith,* 2 Mason, 252.   *Pierce* v. *Turner,* 5 Cranch, 154.

*Montgomery* and *Boyd*, for the defendant in error.

This case involves nothing more than a construction of the act of our legislature concerning conveyances.

The 4th section of the act provides that "all bargains, sales, &c. shall be void as to all creditors and subsequent purchasers for valuable consideration, without notice, unless they shall be acknowledged or proved, and lodged with the clerk, &c., to be recorded." How. & Hutch. 343.

Lacoste, as one of the firm of Briggs, Lacoste, & Co. became the creditor of John Dixon, 31st January, 1837; at which time the deeds from John Dixon to J. P. Campbell, and from J. P. Campbell to Shirley, were unrecorded, although one of them had been executed for more than three months—and the other was not recorded within three months; in consequence of which, they only took effect from date of registration, according to the first section of the same statute. How. & Hutch. 343, § 1.

It has been contended the provision in favor of creditors applies only in favor of judgment creditors. Which point is of no importance in this investigation, as the judgment was obtained before the deed from Dixon to Campbell was recorded; but it was as easy for the writer of the law to use the term judgment creditor, as the term which he did use—and we cannot presume it was an oversight, resulting from ignorance of the distinction, or any other cause. And, therefore, we must construe the term according to the popular meaning, unless it is a technical term and used according to its technical meaning.

In Virginia, when this statute had its origin, the construction contended for has never been judicially recognized; although there is a dictum of Judge Lomax in his digest, limiting its meaning to creditors having a lien on the thing affected. No reasons are given for that view, and it appears to be contradicted in effect by the decisions of their court. 3 Hen. & Mun. 233. 4 Rand Rep. 208. Besides, the same code of laws makes ample provision for the protection of judgment creditors, giving them not only all the rights they could have under this statute, but a perfect lien on the estate of the debtor; which overreaches not

only an unrecorded, but a *bona fide* recorded deed, made subsequent to judgment.

Another objection taken to the title of the plaintiff below, is, that he had notice of the unregistered deed before he obtained his judgment, and, consequently, before he purchased. In answer to this objection, we contend that the rights of the creditor to subject this fund to the payment of his debt, accrued at the time the debt was created; at which time, it is not pretended he had notice of the unregistered deed; unless, indeed, we consider possession of the lot notice of the deed—which we do not concede. Possession is only presumptive evidence of notice of an unregistered deed, sufficient to put the party on inquiry; but in no case has it alone been adjudged to be notice. It is capable of an explanation consistent with the title of the party whose title appears of record. Possession of real estate is not, like possession of personal property, *prima facie* evidence of title; but when possession follows a title unrecorded, it is deemed such a circumstance as should have put a purchaser on inquiry.

In trying a cause on a special verdict or agreed case, the court never weighs testimony to ascertain the facts of the case; if all the facts are found, the court decides the law; but if a part of the evidence is reported to the court, the decision will be made on it, for the court is not the proper tribunal to ascertain facts. Proof of possession would be such a circumstance as would warrant a jury (when connected with other circumstances) to find that a purchaser or creditor had notice of an unregistered deed; but the court cannot infer such notice from such facts, because they are susceptible of a different explanation.

The registry acts were, no doubt, intended in some degree, to cure the evils growing out of the discontinuance of the ancient mode of conveyance by livery of seisin. But that was not the only object; it was designed to defeat secret trusts and antedated conveyances, which were well calculated to operate very injuriously to honest purchasers. And a further object was, to give notoriety to transfers of real estate, and creation of trusts and liens, in order to aid prudent persons in ascertaining the condition of those whom they credited. But it was not the

main object to give notice of these transactions to all who might feel interested in the investigation; it was further designed to perpetuate the testimony of titles. All these objects at once claiming the care of the legislature, must be supposed to have been the inducements to the passage of the law. And it is not fair to select one as being of overpowering importance, and reject another as constituting a minor consideration. If a construction can be put upon the statute, which will protect the interests of one class of parties named in the act, without conflicting with the rights of another, they should receive the benefit of such construction. But it is said, a creditor cannot avail himself of any benefit intended to be secured to him by the statute, while he continues to occupy the position of a mere creditor. And various examples were stated to illustrate the position—to all of which we merely reply, that the rights of the creditor are secured, and those rights are not altered by any steps that it may be necessary to take to render those rights productive. Although it is necessary for him to change his position from that of a creditor to a purchaser under execution, it does not affect his right to treat an unrecorded deed, which was in existence when his debt was created, as a nullity; and to seize and sell the property conveyed as if no such deed existed. Such a construction given to the act, does not conflict with any person whose interests are designed to be protected by the act. The present defendants, for instance, are not entitled to the generous consideration of the court, for they were guilty of *laches* in purchasing without examining the claim of title, which would have revealed to them this defect. And shall they be allowed to defeat Lacoste's right as a creditor, because he might have ascertained the existence of the unregistered deed when he was giving credit, when they have been guilty of as gross negligence in their investigations of the titles they were purchasing?

It has also been insisted that the construction contended for by us, would render it impracticable to sell and vest title while the vendor is in debt. Not so. It is only necessary to observe the requisites of the statute; and although the creditors may be injured, they are not wronged, and have no right to complain.

It was further contended that defendants below, held under a derivative title, and as *bona fide* purchasers without notice, they will be protected. This is a plain misapplication of the doctrine established by courts of equity, for the protection of *bona fide* purchasers without notice of adverse equities. It is well settled that a *bona fide* purchaser, without notice of an adverse equity, can only use it as a defence against the equitable claim. He cannot make it the foundation for relief; and such a defence to a legal title was probably never heard of. There is, probably, not one ejectment in ten, tried without full proof of a derivative title in the defendant obtained in good faith, without notice of the plaintiff's title. Yet no lawyer has yet been found so hardy as to risk his reputation by making the question.

The opinion of the chancellor read in this case, may be sound as far as it goes. We consider it able, and will yield as far as any to his views, whether for or against our preconceived opinions; but he has not criticised the case in Randolph's Reports before referred to, and has directly conflicted with it. The president, in the case in Randolph's Reports, expressly decides that notice of the unregistered deed does not affect the right of a creditor. The chancellor decides that it does—no decision is referred to by the chancellor to sustain his view, and he does not refer to the case in Randolph, from which we infer he had not seen the case; and we may presume, if he had, he would have been of a different opinion. It is certainly the safest course to give a literal construction to a statute which is free from ambiguity. If notice was designed by the legislature to affect the rights of a creditor, why should the first, third and fifth sections of the act expressly prescribe the effect which notice should have on a subsequent purchaser, and be silent as to the effect on the rights of creditors. Whatever doubt may be raised as to the meaning of the third section, from the position of the words, there can be none as to the meaning of the first and fifth sections; each of them expressly provides, that an unrecorded deed shall not be good against a subsequent purchaser without notice—or any creditor.

But says the chancellor in effect, It is a fraud on the rights of a vendor, who has neglected to have his conveyance recorded, to

give credit upon the faith of the property to the vendor with full knowledge of the unregistered deed. And is it not as much fraud to purchase the land when the vendor has had his deed registered, without having had it proved or acknowledged according to law? Yet the chancellor does not pretend that the recording the deed, with a defective authentication, gave it the least validity against the creditor. And if a registration of a deed, not proved, &c. is no notice, how can it be pretended that bare possession is notice. It has never been contended that possession was evidence of livery of seisin.

But Lacoste is prosecuting a legal claim, and the defendants sought to resist him with a legal title. The court are to decide which has the legal title according to the agreed case. And if the deed from John Dixon to Campbell was " void " as to Lacoste at the time credit was given, no subsequent event can make it valid against him.

*William Yerger,* on the same side.

The sole question which this record presents that I deem material to notice, is whether a purchase of real estate, under an unrecorded deed, is protected against the lien of a judgment, rendered after the date of his purchase—the judgment creditor having notice at the rendition of the judgment of the existence of the unrecorded deed. This is an important question, involving a construction of our registry laws—and which will have an important bearing upon the titles to real property within this State.

The 1st section of the law in relation to real estate and conveyances, declares, that no estate of freehold, &c., shall be conveyed, but by writing sealed and delivered—" nor shall such conveyance be good against a purchaser not having notice thereof, or any creditor, unless the same be acknowledged or proved, &c., and be lodged with the clerk of the proper county to be there recorded." How. & Hutch. Dig. 343.

The 2d section of the same statute declares, that agreements in consideration of marriage, " shall not be good against a purchaser, not having notice thereof, or any creditor, unless the

same shall be acknowledged, proved and recorded in manner stated in section first." Ib.

The 3d section of the same act declares, "that all bargains, sales and other conveyances whatsoever of any lands, &c., and all deeds of trust, &c., shall be void as to all creditors and subsequent purchasers, without notice for a valuable consideration, unless they be acknowledged or proved, and lodged for record, &c. But the same as between the parties and their heirs, and as to all subsequent purchases with notice thereof, or without valuable consideration, shall nevertheless be valid and binding." Ib.

The 4th section—which makes provision for the registry of personalty—declares that unless the provisions of the statute are complied with, the deed " shall be void in law, as to all purchases thereof for valuable consideration without notice, and as to all creditors." Ib. 344.

The 5th section of the act provides, that all deeds of trust, &c., and all other conveyances not delivered to the clerk according to the provisions of the act, within three months after the signing and delivering, shall take effect and be valid as to all subsequent purchasers for valuable consideration without notice, and as to all creditors from the time when such deed of trust or mortgage shall have been so proved, acknowledged or certified, and delivered to the clerk of the proper county to be recorded, and from that time only. Ib. 344.

In the construction of all statutes, the primary object for the court to ascertain is the intention of the legislature. This intention may be discovered in different ways. One cardinal rule is to gather the intention from the words; when these are not explicit, it may be ascertained from the necessity and occasion of the law—being the cause which moved the legislature to make it. Dwarris Stat. 694.

In this statute the words are plain—they are incapable of receiving two significations. In every section, deeds not recorded according to its provisions, are declared to be void as to all creditors. No exception is made anywhere in the statute—nor is any distinction made between creditors with and without notice. The only section about which even an argument can be raised,

is the third—even that section, though its grammatical construction might give ground for discussion, if it stood by itself disconnected with the remaining sections of the act, would not bear the test of scrutiny.

The argument of those who rely upon notice to defeat a creditor, is based in some degree upon the phraseology of the third section of the law, which declares that the deed " shall be void as to all creditors and subsequent purchasers for .valuable consideration without notice." If this sentence stood disconnected with anything else, it would seem clear to my mind that the legislature intended to avoid the deed as well as to creditors, with as without notice. If such had not been their intention, the word " all," a term embracing both class of creditors, would not have been used, but they would simply have declared the deed void as to creditors, leaving out the word " all." But all controversy is put to rest upon this subject by the last clause of the section, which declares unrecorded deeds " as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall nevertheless be valid and binding." As the expression of one thing in a statute is the exclusion of another, upon the familiar maxim, " *expressio unius est exclusio alterius*," it is clear, that as the legislature has declared that unrecorded deeds shall be valid between a particular class of persons, it was its intention that they should not be valid as to another class of persons, just named in a preceding part of the section. Dwarris Stat. 713. 5 East. Rep. 478.

In accordance with this view of the statute has been the opinion of this. court, in construing the act of 1824, in relation to the lien of judgments. *Burney* v. *Boyett*, 1 How. 39.

When, however, we take the whole of this statute together, and compare the different sections, all possibility of controversy seems to be taken away. In every other section, the statute expressly declares that unrecorded deeds shall be invalid and void as to all creditors, not connecting the doctrine of notice, with creditors by any possible construction based upon the words of the statute.

In construing statutes, words are to be taken in their natural sense, and one part is to be construed and explained by another; such construction being "*ex visceribus actus*," will be most likely to express the intention of the maker.    1 Inst. 181. Dwarris on Stat. 698.

So, too, one part of a statute must be so construed with another, that the whole may, if possible, stand "*ut res magis valeat quam pereat.*"    It is the duty of the court, too, to look at the whole act, and should any particular expression in one clause not be so large and extensive in its import as those used in other parts of the act, it is the duty of the court to give effect to the larger expressions if, upon a view of the whole act, it can collect such to have been the intention of the legislature.    7 Barn. & C. 643.

These rules being applied to this statute, whatever of doubt the phraseology of the third section might create within the mind, is entirely and completely removed.

Inasmuch, then, as by fair interpretation and construction of this statute, the doctrine of notice cannot be applied to creditors, the advocates of that side of the question are compelled to ask of this court to resort to a species of judicial legislation, and to incorporate within the statute an exception, which the law-makers themselves would not establish, but, on the contrary, have in words almost rejected.

Whatever, in former times, might have been thought of such a course of decision, the experience of years has taught judges the pernicious effects of a train of decision, which, setting at defiance the plain, natural and common sense meaning of statutes, has interpolated into them exceptions, intended, laudably no doubt, to subserve the ends of substantial equity, but which have resulted in the production of evils more enormous and intolerable than those, the statutes, were intended to correct.

I allude particularly, now, to the decision on the statutes of "Frauds and Perjuries;" in reference to which, the late English books are full of regrets, that courts of equity had usurped legislative power, and created exceptions where the legislature had made none.    7 Term. R. 201.    3 Vesey, 702.    6 Vesey, 32.    19 Vesey, 210.    3 Merv. 247.    2 Sch. & Lef. *Lindsay* v. *Lynch.*

The rule that courts, even courts of equity, can make no exceptions where the statute has made none, and that it cannot relieve against one word of a statute, has been repeatedly held, and is now esteemed sound law. 7 Bac. Works, 269. 20 Johns. R. 33.    Martin & Yerger, 333.    1 Fonb. Eq. 161.

The question under consideration, has been adjudicated by several States; and in every State, with one exception, it has been held that creditors were not affected by notice of an unrecorded deed.   In Kentucky, which constitutes the exception referred to, the decisions have conflicted.   In Tennessee, this question has been repeatedly decided.   Martin & Yerger, 385. 8 Yerger, 373.   9 Ib. 64.   See also, in North Carolina, 1 Dev. Eq. R. 470.   4 Dev. 384.   3 Hawks, 55.   Such has been the decision in Connecticut.   3 Conn. R. 406.   Likewise in Pennsylvania.   7 Sergt. & Rawle, 286.   13 Ib. 167.   17 Ib. 70.   7 Watts, 261.   In Virginia, where a registry statute is similar to ours in all respects, it has been positively adjudicated in several cases..   2 Munf. R. 545.   4 Rand. 208.   8 Leigh's, 416.   In Kentucky, the decisions, as before remarked, have been conflicting.   That creditors are not affected by notice, is decided in 2 Bibb. 423.   2 Ib. 78.   3·A. K. Marshall, 12.   Contra, 4 Dana's Rep. 238.

In opposition to the express words of this statute—contrary to the decisions of numerous respectable tribunals in our sister States, and against the uniform and long settled understanding of the bar in this State, this court is now asked to establish a rule of decision which will unsettle the landmarks of real property throughout the State: thus producing certain evils, with the bare prospect of a doubtful good.   And, to sustain the position taken by counsel, we have been referred to the decisions of English courts, and the courts of New York and Massachusetts upon their registry act.     .

Upon a recurrence to them, it will be seen that they nowhere refer to creditors ; and decisions upon them have no direct authority, and can only be applied to the construction of our statute by doubtful analogy.

The English registry acts declared all conveyances not duly

recorded, to be void, making no exceptions. Courts of equity there, in that spirit of judicial legislation before referred to, held that the object of the statute was to give notice ; and, that, if notice by parol could be proved, the unrecorded deed should stand.

With these decisions of the English court before them, and the reasons inducing them to make those decisions, our legislature passed the recording act of 1822; and, incorporating into that act the doctrines of the courts of equity in reference to notice by subsequent purchasers, made that a rule of law in this country, which in Great Britian was a rule of equity. Can the idea be tolerated for an instant, that the legislature, thus legislating in regard to purchasers, would have omitted to apply the same rule to creditors, had it not been expressly intended to exclude creditors from the operation of the rule. Any other view of the statute would seem to me to impute to the legislature, who passed the act of 1822, ineffable stupidity.

Let us examine, for an instant, the doctrine of the English courts, upon the subject of notice, and see whether the reasons inducing its adoption, as to purchasers, with even plausibility can be extended to creditors.

Courts of equity in Great Britain were induced to break in upon the registry acts, because they declared that as the object of the statute was to give notice, it would be unconscientious and fraudulent in a subsequent purchaser with notice, though not obtained from the registry, to hold property thus acquired; and, accordingly, it has been held, that "notice to break in upon the registry acts, must be such as will, with the attending circumstances, affect the party with fraud. The ground of the numerous decisions seems to be the actual fraud of the party, taking a second conveyance with a knowledge of the first, and with intent to defeat it." The person who takes subsequently, must know exactly the situation of the prior deed, and have meant to defraud. 3 Ves. 478. 2 Atk. 275. 2 Johns. Ch. R. 182. 18 Johns. Rep. 555. 8 Cowen, 264.

Now how can this doctrine of notice, based upon the idea of fraud, affect a creditor, whether a creditor before or after the sale ?

Although A. may know that B. has sold a tract of land to C., and that C. has failed to record the deed, yet A. is not guilty of any fraud in trusting B. after the knowledge of such sale, upon his general property, or character for honesty ; he does trust him, and B. fails to pay, and A. is compelled to sue for the recovery of his debt. Now the contract between A. and B. was fair and *bona fide*, in its inception ; A. was guilty of no fraud in giving the credit to B., and as B. failed to meet his engagements, then comes up the question, How can his debt be secured? He knows of the tract of land held by C.—he looks to the record, and finds the deed is not recorded as the law directs, and he has his execution levied. Can C. complain ? Surely not. His own negligence caused the failure to record the deed. The equity of A. to collect his debt, is equally great with that of C. to retain his land, and as he has an equal equity, and the positive enactment of the law in his favor, he must prevail—for " where equities are equal, the law must prevail." And, as before remarked, C. cannot complain ;—for his own negligence produced the evil ; and the maxim of the law stares him full in the face, " *vigilantibus non dormientibus leges subveniunt.*"

It is true the rule may, in some instances, produce individual hardship—but it gives us a safe and definite rule of law—and if evil grow out of the administration of the law, as enacted by the legislature, it is for it, not the courts to correct it.

I will not say that there are not cases in which perhaps a court of equity would relieve against a creditor, as for instance— If A. were to know that B. had sold to C. and that C. had failed to record his deed, and for the purpose of defeating the sale, to C., A. should credit B.—in such case, a court of equity would perhaps relieve on the ground of fraud, and in such case, A. would be rather a subsequent purchaser—making use of the forms in which a creditor enforces his rights, than an actual creditor. I refer the court particularly to the cases reported in 4 Rand. Rep. 208. 1 Dev. Eq. Rep. 470.

It has been contended, that however much a creditor may be protected by the statute, yet a purchaser at execution sale is not protected. For the fallacy of this position, if authority be need-

ed, I will cite, 4 Rand. Rep. 208. Martin & Yerger. 385. 1 Dev. & Battle, 55.

*G. Winchester*, in reply.

The words " creditor or creditors," mean purchasers under judgments, and these words were first introduced into the statute in Virginia, from which it has been borrowed in other States, solely for the purpose of bringing purchasers upon sales of land under judgments, within the meaning of the recording statute, upon a doubt whether they would otherwise be embraced by the words "subsequent purchasers." It was doubted whether " subsequent purchasers" would not be construed to mean purchasers from the fraudulent vendor, as might be contended.

1. Because the statute would appear intended to prevent the vendor from fraudulently imposing upon a subsequent purchaser, by giving public notoriety to the first sale ; after conveyances of land by the mere operation of a deed of bargain and sale, unaccompanied by possession or seisin, ceased to have that public notoriety, which attended them by feofment and livery of seisin at the common law.

2. Because the execution under a judgment giving a naked authority to the sheriff to sell lands and tenements belonging to the defendants, lands, previously to the judgment, conveyed by the defendant, would not be his lands or tenements.

It was the doubt, whether upon these two reasons, the statute might not be construed, not to embrace purchasers upon sales under judgment, that, as I apprehend the words, creditors were introduced.

1. Because such is their only effect, unless the recording statute be construed into a statute of lien, or a statute of frauds.

A creditor, either a judgment creditor, and much less, one not a judgment creditor, can never avail himself of the benefit of the statute to avoid the unrecorded deed, either in a court of law or equity.

It is only a purchaser of the land upon a sale under a judgment obtained by the creditor, that can have the benefit of the statute, and when he obtains the right, there ceases to be a creditor.

Dixon & Starkey *v.* Doe ex dem. Lacoste.

This conclusively shows a purchaser under a creditor, and not the creditor himself, was meant to be protected by the statute.

2. And the purchaser only, and not both the purchaser and the creditor, was intended to be benefitted by the statute; because to construe the statute literally to mean a creditor as well as a purchaser, will be to construe a statute to give notoriety to prevent fraudulent conveyances by the secrecy of a prior conveyance, into a statute giving creditors a lien for their debts or judgments upon lands unrecorded, or into a statute of frauds, declaring deeds made to avoid and defeat creditors, fraudulent and void.

This cannot be done, 1. Because it would be construing the recording statute, to suit the literal meaning of a single word, which plainly was not intended by the legislature to be used in its literal sense, contrary to its general intent, that of giving notice to prevent fraud, into a statute of liens or a statute of frauds.

2. Because the same legislature have passed a general law of lien, and also of frauds, by which they have made all conveyances of land or personal property by the defendant conveyed after judgment still subject to the judgment, and all deeds made either before or after judgment with the intent to delay and defraud creditors, absolutely void.

But the statute of liens does not extend to lands conveyed before judgment, nor the statute of frauds to conveyances where the intent of fraud does not exist or can be disproved, or where land so fraudulently conveyed, has passed into the ownership of subsequent *bona fide* purchasers, without notice of the fraud.

The recording statute must be construed not to bend its meaning and general intent to suit the literal meaning of particular words, or the order and arrangement of words in a sentence, or the literal meaning of phrases, or even of whole sentences and clauses, but the reverse is the rule of construction.

The literal meaning of words, their order and arrangement in a sentence, the literal meaning and order and arrangement of all phrases, sentences and clauses, must be construed according to the general intent, the meaning and spirit of the statute.

If the evil intended to be avoided by the statute, was the danger of fraud from secret conveyances of land by deeds unaccompanied by actual seisin, and if the remedy intended, was constructive notice of such conveyances to all the world, by placing them upon public records; then the words " creditors," and the order of the words " without notice," must be construed to prevent this evil of fraud from secrecy of conveyances, and to advance the remedy of giving notice to persons who might otherwise be defrauded.

Now, how is a judgment creditor defrauded into taking a judgment against his debtor, by want of notice of an unrecorded deed through the records of the country? A purchaser may be defrauded into a purchase of the land under his judgment, from the want of notice, but surely the judgment creditor is not deceived or defrauded into taking his judgment by the want of such notice.

As a statute of notice, or a statute to prevent frauds for want of notice, the general intent and object of the statute has no sense or meaning in its application to a creditor, either a general creditor or a judgment creditor.

Notice to the creditor before he obtains his judgment, is of no benefit to a purchaser under such judgment, who has himself no notice at the time of the purchase; and the want of notice to the judgment creditor, is no injury to the judgment creditor, to protect him against the consequences of taking his judgment from the want of notice.

As a statute of notice, therefore, creditors, in their literal sense, are utter strangers, introduced into the statute without any meaning or purpose connected with the general intent of the statute, with the mischief it was intended to prevent, and the protection it was intended to afford.

And as the purchaser under the creditor is the only person intended, or who can be benefitted by the statute, he is protected if the deed is recorded before he purchases, or if he has actual notice, which is a surer protection than constructive notice by recording, whereas he is not protected by actual notice to the creditor before judgment.

But to show the recording statute was not intended to operate as a lien statute in favor of creditors, the *argumentum ad absurdum* may be applied:

1. Suppose creditor means a general creditor, and that a creditor without notice of an unrecorded deed at the time he contracted the debt, has a lien upon the land his debtor had previously conveyed, as against the purchaser. The debt, then, is a lien upon the land conveyed to the purchaser, when it would be no lien upon the land if his debtor had not conveyed it, and when the lien would be destroyed by a mere reconveyance of the land to his debtor by the purchaser having the unrecorded deed.

The same would be true of a judgment creditor, if it were not for another statute making a judgment a lien.

Suppose no statute of liens had been passed, and the purchaser before judgment under a deed unrecorded, should reconvey to the debtor; the land in the hands of the debtor would not be subject to the lien of the judgment until execution was taken out. Then, if the recording statute is construed a lien statute, as against the purchaser in behalf of the creditor, if the debtor had not sold the land, the judgment would have been no lien, and a conveyance by the purchaser to the debtor would destroy the lien; for a sale of the land *bona fide* by the debtor after the judgment and before the common law lien of an execution issued had attached, would be valid against the judgment creditor, or any purchaser on an execution under him.

This shows the absurdity which would flow from twisting the recording statute from its general intent and spirit as a statute of notice, into a statute of liens to accommodate it to the literal sense of the word creditors or creditor.

I have given a probable reason for introducing the word "creditors" into the statute, and shown that none but a purchaser under a judgment creditor could have been intended.

But suppose no meaning can be given to the words consistent with the general intent and meaning of the recording statute, the rule then is, that they must be rejected as utterly void, and as no part of the statute.

It is clearly shown, I think, that the statute intended to con-

fer no benefit or right upon creditors, but only upon purchasers under a creditor. The creditor himself deriving no benefit from the statute, being in no ways concerned in the notice of a conveyance made by his debtor, previous to judgment, and the statute of liens only operating upon conveyances after judgment and not conveyances made before; and if the conveyances be made before, the creditor being in no way interested in having notice of such conveyance before he takes his judgment, and the word "creditors" meaning such purchasers as purchase under a judgment, it would appear to follow conclusively, that if the purchaser has actual notice of an unrecorded deed, or the deed is recorded before he purchases, that the purchaser is fully protected and has all the benefit of the statute, if he has either actual or constructive notice at the time he purchases.

That the time of the purchaser's purchase, and not the time of the creditor's contracting the debt, or obtaining the payment, should be held to be the time to which the notice of the deed or title made before judgment, applies, is not only supported by these plain rules of interpretation, but also by the dangerous consequences which will flow from a different construction, when we look at the subject matter of the statute.

The subject matter is titles to real estates.

If the notice of a conveyance made before payment, whether actual or constructive, is to be construed as if intended for the benefit of the creditor, and not the purchaser under the creditor, so as to require a notice actual or constructive of said conveyance, either before contracting the debt or before obtaining the payment, or otherwise that the purchaser is to acquire a title to the land by relation back to the lien of the debt, or the lien of the judgment as against the purchaser, by construing the recording statute a statute of lien upon the land in favor of the creditor as against the purchaser under his debtor, what will be the consequence of such construction to land titles in this State? How well the *argumentum ab inconvenienti* applies. Wherever, owing to the blunder of a magistrate taking the acknowledgment of a deed constituting a link in any man's chain of title to lands in this State, or from any other cause, a deed is improp-

Dixon & Starkey *v·* Doe, ex dem. Lacoste.

erly admitted to record, and actual notice to the creditor at the time of contracting the debt, or at the time of obtaining the judgment against the grantor of such vicious deed, the land will be subject to such judgment, and the purchaser under the judgment will acquire the best title to the land although such purchaser had actual notice of such unrecorded title before he purchased, simply because the creditor had no notice at the time he took his judgment, or contracted the debt; when if the creditor had had such notice, although the purchaser had had no notice, he would acquire no title. Would not such a rule of construction disturb half of the land titles in this State, which have not been protected by a twenty or fifty years' adverse possession?

Many debtors in this State now insolvent, against whom foreign creditors have obtained judgments, which are unsatisfied, have conveyed lands within the last twenty years, whose deeds constitute a link in the chain of titles held by land-holders now, whose deeds are not recorded in compliance with the directions of the statute, and of whose conveyances foreign creditors could have had no actual notice; and are the present owners to lose their lands for every deed of a debtor in their chain of title which has not been correctly admitted to record, or by accident, ignorance or negligence has not been recorded by some former owner? It would 'afford a grand source of speculation to collecting lawyers and their clients, and may raise a question, whether a notice to the lawyer of an unrecorded deed at the time he obtains a judgment, is not notice to the client?

But the consequences to land titles will be still more disastrous, if the creditor is not even affected by actual notice, or rather if the purchaser under the creditor is not even affected by actual notice to the creditor, either at the time the debt was contracted, or the judgment obtained, of such unrecorded deed.

Whatever construction may have been placed by the courts of other States, upon these words " creditors " and " without notice," it is a new question in this State; and before the highest tribunal of this State will establish a rule which is to become a part of the law relating to the common assurances of titles to land, and so endanger the titles of all land-holders, they must find them-

selves compelled, not only by the decisions of other courts, but by the reasons upon which those decisions are founded as right reasons, by the time-honored maxims and rules of interpretation as applied to statutes, they must find themselves compelled, I say, to decide, that as against a purchaser of an unrecorded deed, and all purchasers under him not protected by a twenty years' adverse possession, the creditor of the grantor of such unrecorded deed, has a lien for his debt, either from the time it was contracted, or the time he obtained judgment, and that even actual notice of such unrecorded title will not protect such purchaser or the twentieth innocent *bona fide* purchaser under him, though in possession nineteen years, against the title acquired by a purchaser under such judgment creditor.

But this court is forced into no such construction, the decisions of other courts making such a construction notwithstanding. For it will be found those decisions have not been well considered, perhaps hastily given, without examination and discussion, and perhaps the argument from inconvenience may not be as applicable to them in Virginia as in this State, where lands so frequently change owners, and there are so many more links in the chains of titles, and where the relation of creditor and debtor is so frequent, and I may add where magistrates so frequently make mistakes in certifying proofs or acknowledgments of deeds, and where, by accident or mistake, a deed is not recorded within three months.

If under the 5th section, deeds are only to take effect from the time they are recorded (when not recorded within three months) as against the creditor literally, instead of, as against the purchaser under the creditor, and the purchaser is unaffected by actual notice to the creditor, or even if only affected by actual notice to the creditor at the date of the debt, or at the date of the judgment, the consequence to land titles would be ruinous. It is not good policy to extend judgment liens to lands conveyed before judgment, because not recorded, as the legislature have already made the lien law onerous enough to land titles by prescribing no limitation of time for enforcing them. A judgment lien may hang over a title acquired after judgment for sixteen years, without being enforced; it is not policy to extend these

liens to lands conveyed before the judgment when the lien law or statute does not embrace them, by construing the recording law into a lien law.

Much less will the court, by deciding that actual notice does not apply to creditors, merely because in the order and arrangement of words in a sentence, the words "without notice" were carelessly, by the draftsmen, placed before creditors, instead of after, convert the recording statute into a statute of frauds, and construe the deed to be void for fraud, because not recorded.

If the failure to record is a fraudulent act, which renders the deed void for fraud in the purchaser, then the intent is to be inquired into, and if the failure to record was not intended, but happened by the accidental loss of the deed, or by the error of the magistrate on his certificate of the proof or acknowledgment of the deed, it would, under a statute of frauds, not be fraudulent. Nor would it be fraudulent in the hands of subsequent *bona fide* purchasers, without notice of the fraud, which in this case would require they should not only know at the time of the purchase the deed was not recorded, but also that the grantor was indebted to the creditor, at the time Campbell conveyed.

But this court, by the plainest rules of construction, aside from the above arguments to an absurdity and from inconvenience, are, by familiar and clear rules for arriving at the interpretation of statutes according to the intention of the law-maker, necessarily led to construe the word "creditors" to mean purchasers under creditors upon execution, or to have no meaning at all, and to transpose the words "without notice" and place them after creditors, in order to conform to the statute as a statute of notice.

For surely if the statute was only intended to give purchasers from the vendor notice, and if it declares actual notice as to them as good as constructive notice, and if this is the only benefit the statute intended, upon what reason or rule of arriving at the intent of the legislature, can it be said that they meant by the very same statute, anything more, than to give notice to a purchaser under a judgment creditor, and that actual notice to him before he purchased should be equivalent to constructive notice,

as it would give him all the benefit of the statute, and he could not complain if he purchased after actual notice, that he had not had the notice the statute intended, to protect him against a secret conveyance.

The notice therefore of a conveyance, whether actual or constructive, intended by the statute to protect a purchaser under a judgment, is notice to him, the purchaser, at the time he purchases, and not notice to the creditor at the time he obtains the judgment or contracts for the debt, which would be of no use either to the creditor or to the purchaser to protect either from being defrauded by a secret conveyance.

I have insisted thus strenuously upon this rule, to wit, that where land was conveyed before judgment, and the purchaser has notice, either actual or constructive, before he purchases, that the deed, though unrecorded at the date of the judgment, and though the creditor had no notice at the date of the judgment, would not be void against the purchaser, because that to require the notice to be to the creditor, and apply to the date of the judgment, would be not only liable to the *argumentum ad absurdum*, and would be construing the recording statute of notice, into a statute of liens, or a statute of frauds, but more particularly and especially, because I honestly believe it would create great havoc upon land titles; and open the widest door to litigation.

But it is wholly unimportant to my clients in the decision of this case, provided that the court decide that a creditor, whether judgment or general, is affected by actual notice.

For in this case, not only the creditor but the purchaser, had actual notice of our title, not only before judgment, but before the debt was contracted. And if actual notice under the statute affects him as much as constructive notice, then the deed is not void at law upon the facts stated in the agreed case, and plaintiffs in error are entitled to a reversal of the judgment, and a judgment in their favor.

The following authorities will show that the statute is to be construed a statute of notice; that actual is as good as constructive notice; that the actual possession of the land is actual no-

tice, and that creditors are equally affected with purchasers by actual notice.

The case in 4th Massachusetts, will show that their statute is as broad as ours, for it makes an unrecorded deed valid only as against the vendor and his heirs. It is therefore void against the rest of the world.

It is true, as stated by Judge Montgomery, that in Massachusetts the whole estate in fee simple is not sold, but because only a lesser estate is sold, and purchased by the purchaser, does not alter or affect the principle. And it will be further noticed, that in making their statute apply literally to creditors, it is done upon the ground that the creditor acquires a lien by attaching the land, from the date of his attachment. Notice, therefore, to the creditor attaching is material, as without notice of the unrecorded title at the time he attaches, he would undergo the expense and lose the benefit of his attachment, if notice to him at the time of attaching, were not required. So far, therefore, those cases are not analogous and do not apply to the question whether, under our statute, the notice should be to the creditor, and at the date of the debt, or at the date of the judgment. As the attachment, too, only binds the land from the date of the attachment, and as the attachment is upon the land itself, he cannot fail to have actual notice if the purchaser under the unrecorded title, is in possession. But in obtaining a judgment against a debtor, the judgment creditor is not likely to have notice that lands which his debtor has sold, and of which the deed is unrecorded is in the possession of others. It is when he comes to sell under his execution, that the purchaser is likely to know, if the purchaser is in the actual possession.

There is, therefore, no danger of disturbing the titles of landholders in possession in Massachusetts, in whose chain of title there is some unrecorded deed, or deed defectively recorded, by requiring that the attaching creditor shall have actual or constructive notice at the time he attaches the land itself, as there would be in this State, by ruling that the creditor shall have actual notice at the time he takes his judgment; and the creditor

there is interested in having notice at the time he attaches, but here is not at all interested in having notice at the time he obtains judgment.

1 vol. Chitty's Blackstone's Rules for construing Statutes, p. 60.  7 Bacon's Abridgement, title, Statutes, 457.  Rev. Code, 192, § 1, 5.  4 Mass. 640, Ib. 541.  1 Pickering, 164.  10 Mass. 60.  6 Mass. 488, Ib. 24.  2 Mass. 508.  3 Mass. 573. 10 Mass. 60, Ib. 403.  11 Mass. 153.  14 Mass. 296.  6 Wendall, 226–7.  2 Vesey, 437.  4 Conn. 575.  9 Johns. 163.  10 Johns. 457.  15 Johns. 555.  2 Binney, 455.  4 Dana, 258.  4 Dessaus. 552.  1 Paige, 30.  Case in Martin, 385.  8 Yerger, 383, and 9 Yerger, 90, make the statute a statute of frauds and not of notice.

4 Randolph, 208, has to make the creditor a purchaser, and then make the purchaser's title relate back to the lien of the creditor, to wit, that the creditor's debt is a lien by force of the recording statute, which is not the intention of the legislature.

4 Dana overruled the former decisions.   Vide 7 Watt, 271.   3 Conn. 406.

It is no deed until recorded—conveyance by matter of record. 1 Devereux, Eq. 170.

The case of mortgagor is not in point—a mere contest in equity between creditors, which has first secured his debt, the mortgagee, by recording, or the judgment creditor, by getting his judgment.   It made no difference which had the oldest debt, the question was, which got it first secured?   In equity, it was a mere security for a debt.   1 Devereux & Battle, 35.

The first question is, Whether a general creditor acquires a lien from the date of his debts, upon all lands in the State his debtor has ever owned and conveyed away before his debt was contracted, as against all persons holding title under such debtor's conveyance, if such debtor's deed is not recorded according to the directions of the statute, notwithstanding actual notice to the creditors of such unrecorded title anterior to the date of the debt?

The second question is, Whether a judgment creditor acquires a lien by virtue of the recording act upon all lands which his

debtor ever owned as against all subsequent purchasers under the debtor, if the debtor's title was not recorded in conformity to the statute, although such judgment creditors had actual notice of such title ; or does creditors mean purchasers ?

The rule of law of real property which defendant in error's counsel seek to establish by their interpretation of the statute, is, that, as against a purchaser under an unrecorded or defectively recorded deed, and all persons holding under such purchaser, a creditor has a lien for the debt of his debtor upon such land from the time his debtor conveyed to such purchaser, provided the deed was not recorded at the time the debt was contracted ; and that even actual notice of such unrecorded title, or even the ignorance of the creditor that his debtor was ever owner of such land, will not prevent the lien of the debt attaching as against such purchaser and all persons claiming under him, though they may have possessed the land peaceably one hundred years.

Or, if creditor means judgment creditor, that such lien attaches as against the purchaser from the date of his purchase, if the the deed was not duly recorded at the date of the judgment, although he had actual notice.

Even if defendants in error would allow actual notice to be as good to prevent this lien, either of these rules would be of great benefit, no doubt, to creditors and lawyers, but ruinous to innocent *bona fide* holders of land.

Plaintiffs in error contend that the rule of law which should be established as a correct construction of the statute, is,

That an unrecorded deed is void as against a purchaser under a judgment, provided the purchaser had neither actual nor constructive notice at the time he purchased.

This rule, if established, will protect landholders in their titles, who may have some defective link in their chain, by some deed happening by actual ignorance or mistake to be defectively recorded; and this rule will do no injury to creditors.

If a purchaser alone is meant by the word creditors, then, by the express terms of one statute, the unrecorded deed is valid against all purchasers having notice at the time of the purchase.

A creditor is not meant, and a purchaser is meant.

1.   Because a creditor is not benefitted by notice, nor injured by want of notice, he is neither within the mischief or remedy of the statute; the purchaser alone is benefitted by notice and injured by the want of notice.

2.   Because the creditor never himself can have the benefit of the statute, but by construing the recording statute a statute of lien or a statute of frauds.

It is a statute of notice, and not of lien or fraud.

1.   Upon the best authorities it is a statute of notice.

2.   To construe it a statute of liens would lead to absurdity.

3.   To construe it a statute of liens or frauds would be ruinous to landholders, though beneficial to creditors.

Mr. Chief Justice SHARKEY delivered the opinion of the court

The defendant in error brought ejectment against the plaintiffs in error for a lot of land in Natchez, and recovered judgment; to reverse which, the plaintiffs in error sued out their writ of error.

The facts contained in an agreed case are as follows, to wit; John Dixon was the original owner of the lot; on the 13th of September, 1386, he conveyed it to John P. Campbell, who thereupon took possession but failed to have his deed recorded before the 25th of April, 1838, which was long after the proper time for recording had elapsed.

On the 24th of October, 1836, Campbell conveyed to John Shirley, who took possession but did not have his deed recorded until the 4th of March, 1837, which was after the proper time for recording had elapsed.

In April, 1838, Shirley conveyed part of the lot to Edward Dixon, and the residue to Joseph Starkey, the plaintiffs in error, who took possession and had their deeds regularly recorded within three months.

John Dixon, the first owner, became indebted to Briggs, Lacoste & Co. by a bill of exchange dated the 31st January, 1837, payable on the 31st of January, 1838.  Suit was brought on this bill, and on the 17th of April, 1838, Briggs, Lacoste &

Co. recovered a judgment. Execution was sued out, and levied on the lot; which, after having been regularly advertised, was sold as the property of John Dixon; and Lacoste, the defendant in error, who was one of the judgment creditors, became the purchaser and received a deed from the sheriff. Lacoste knew before the date of the judgment, that John Dixon had sold the lot. On this state of facts, the court below rendered judgment for the plaintiff in ejectment.

The ground on which the plaintiff seeks to overreach the deed from John Dixon, is, that it was not recorded as the statute requires, and is therefore void against creditors. The superiority of title must depend upon the construction of the registry act.

In applying the provisions of the statute to the foregoing facts, the first question to be determined is, are creditors affected by notice of an unregistered deed? If it should appear that they are, then it will be necessary to determine what constitutes notice.

This case seems to have excited much interest amongst the members of the bar generally, and has been discussed with great ability and research in all its bearings. After the passage of the registry acts in England, the court of chancery seized upon the circumstance of notice to a subsequent purchaser of a pre-existing unregistered deed as sufficient to create an equity between the prior and subsequent purchaser, by which the former should prevail against the latter notwithstanding the legal title which passed to the subsequent purchaser. By the 27 Hen. 8 c. 16, it was provided that a bargain and sale should not enure to pass the freehold unless it was recorded. As a conveyance of the legal estate, it was therefore inoperative even between the vendor and vendee. The 7 Ann. c. 20, provided that unregistered conveyances should be void except between the grantor and grantee. It contains no exception as against such as may have notice of the unregistered deed; consequently, there could be nothing more than an equity in favor of the holder of an unregistered deed against a subsequent purchaser who had purchased with notice. The notice gave rise to the equity, as in that case the subsequent purchaser was supposed not to be within the reason of the law. Equity, therefore, en-

grafted on that statute a provision by which the conveyance was valid in equity as against a purchaser with notice.   The statute of this State declares in express terms, that unregistered conveyances shall be void as to purchasers without notice, from which it follows that they are valid as to subsequent purchasers with notice ; and as to them there can be no question of equity, as the conveyance is either void, or it is a valid conveyance of the legal estate.   Creditors are also mentioned in the statute, and unregistered conveyances are also declared void as to them. The main question is, whether they are affected with notice as subsequent purchasers are ?  If they stand on the same ground with subsequent purchasers, then, as to them, too, an unregistered deed with notice conveys the legal estate, and there can be no question as to equities.   If, on the contrary, such conveyances are void as to creditors notwithstanding notice, then the question of a prior equity, founded on the notice, might arise between the creditor and vendee.   Thus it will be seen that the main difference between our statute and the statute of Ann, is, that notice is equivalent at law to registration in the one case, and, in the other, it is equivalent in equity to registration.  Having said thus much in reference to the grounds of equity cognizance, I shall proceed to the legal questions involved.

Are creditors, alike with subsequent purchasers, affected with notice of a prior unregistered deed ?  To a correct understanding of the statute, it is necessary that the several provisions should be examined with some minuteness.   It is an act concerning conveyances.   The first section provides that no estate of inheritance, or freehold, or for a term of years, shall be conveyed unless the conveyance be in writing, sealed and delivered ; "nor shall such conveyance be good against a purchaser for valuable consideration, not having notice thereof; or any creditor, unless the same writing be acknowledged by the party or parties who have executed it," &c., or be proved by a subscribing witness, the acknowledgment or proof to be made before a competent officer, who is required to endorse his certificate, and then the deed to be deposited with the clerk of the proper court for record. And the deed, when so acknowledged and recorded, may be

given in evidence without further proof. This is the substance of the whole of the first section with a part of it extracted.

The second section concerns covenants and conveyances made in consideration of marriage, and provides that they shall not be good " against a purchaser for valuable consideration not having notice thereof, or any creditor," unless recorded.

The third section provides that all bargains, sales and other conveyances, whether made for passing an estate of freehold or for years, and all deeds of settlements upon marriage, either of realty or personality, and deeds of trust and mortgages, " shall be void as to all creditors and subsequent purchasers for valuable consideration, without notice," unless they are acknowledged or proved, and lodged with the clerk for record, " according to the directions of this act;" but as between the parties and their heirs, and subsequent purchasers with notice, such deeds are declared to be binding.

The fourth section directs when deeds for personal property shall be recorded, which by law are required to be placed upon record.

The fifth section provides that every conveyance, covenant, agreement or deed mentioned in the act, except deeds of trust and mortgages, shall be delivered to the clerk of the probate court for record within three months, and in that case they take effect from their date, but if not so delivered then they only take effect from the time when they are so delivered, deeds of trust and mortgages in all cases taking effect only from the time they are delivered for record.

The subsequent sections prohibit the recording of deeds without the proper certificates, and prescribe the forms, &c., and direct the clerk in his duties.

It will be perceived that by a literal and grammatical construction of the first section, creditors are exempt from the effect of notice of an unregistered conveyance. As to them, notice does not alter the case, the deed being void at all events. But subsequent purchasers are affected with notice. The second section also keeps up the idea that an unregistered deed is void against creditors at all events. But the third section is clear

and explicit, that unregistered deeds shall only be void against creditors and purchasers without notice, which is in effect to declare them valid as to all creditors and purchasers with notice. Now which of these sections is to control in the construction, or is either one to control to the exclusion of the others? They may appear contradictory and repugnant; in phraseology they are so, but not in sense and spirit. I cannot doubt but what the intention of the legislature is more fully and clearly expressed in the third section, in reference to the effect of notice, than it is in the first. Nor can I doubt but what creditors with notice are as much within the spirit and meaning of the whole act, as purchasers with notice. In the usual course of legislation, laws are divided into sections, each section performing a distinct office, or containing a distinct provision. They constitute separate parts of an entire thing. In construing the act the whole of it must be looked to, in order that apparent repugnancies and contradictions may be reconciled. The object is to get at the spirit and meaning—the design and scope of the law. That part of a law which is plain, may serve to explain that which is less certain. And we are often justified in adopting a construction which evidently embraces the meaning, and will carry out the object of the law, although in doing so we may disregard both the letter and grammatical construction. We must look at the old law, the mischief and the remedy. Now let us endeavor to trace the operations of the legislative mind in the several sections of this act. The object of the first section seems to have been to prescribe the sort of instrument by which freeholds should pass. It consequently declares that no freehold shall pass, except by writing, sealed and delivered. In an act concerning conveyances, it is natural that the legislature should have given some thought as to what should constitute a conveyance. This was necessarily the first thing to be spoken of in order to give a perfect understanding of that which was to follow; and it is manifest that the first section was designed to perform this office. This was its prominent object. It declares what a conveyance shall be, whilst the succeeding sections regulate the ceremonies necessary to its com-

pletion and its effect. It is true that in this section we find it said that such conveyance shall not be good against a purchaser for a valuable consideration not having notice thereof, or any creditor, unless the same be acknowledged, &c. But it is plain that this provision was not intended as the prominent feature in that section; it is also plain that as to this provision further legislation was intended because it is imperfect, and also because another entire section is devoted to that subject. The second section is devoted to marriage settlements, as its principle object, and yet it gives countenance to the idea that creditors are not affected by notice. Then comes the third section, which is exclusively devoted to a subject incidentally mentioned in the others, but in reference to which the preceding provisions were deemed imperfect. It clearly and beyond dispute, places creditors and purchasers on the same ground by declaring that every kind of conveyance shall be void as to them, of which they have no notice, unless it be recorded. Here we find an entire section devoted to the protection of purchasers and crediters. We must infer that the sense of the legislature is here more fully expressed than it is elsewhere, and if so, this section must serve to explain the others. The others must have been regarded as imperfect, else why should this have been inserted? and if there were even a repugnance, this section should prevail, because it recapitulates all that preceded it, and indeed seems to have been designed to correct and explain whatever might have been left doubtful in the others. We do not thus adopt one section to the exclusion of the others, but it is construing one part by the lights which another furnishes. These remarks have been suggested by the singular structure of this statute, and as expressive in part of the course of reasoning which has led to the conclusion that creditors are affected by notice as well as purchasers.

But apart from a comparison of the several sections, if we look to the reason and object of the whole law, we find that creditors are equally within its purview, and have been so considered in the interpretations of these statutes in England and the United States. These interpretations show the reason of the

law, from which it is evident that notice is equivalent to registration as to all persons.   This becomes perfectly apparent when we look at the common law, the evil which was likely to result from the statute of uses, and the remedy which the registry acts had in view.

We know that by the common law, livery of seisin was necessary to pass a freehold estate.   The object was to give public notoriety to the transaction, and thus to prevent imposition. The effect of a bargain and sale without livery, which was a sort of real contract, was to raise a use, the bargainor being a trustee for the bargainee.   It was not a perfect legal conveyance of the freehold, because livery of seisin was wanting.   The effect of the statute of uses was to execute the use, by transferring possession to the usee.   Consequently under the operation of that statute, a bargain and sale became a means of conveying the freehold without livery of seisin.   The notoriety of the transaction was wanting.   Perfect legal conveyances might be made secretly.   Subsequent purchasers were liable to be deceived, and so were persons taking mortgages on the estate.   This evil consequence was perceived by the same parliament that enacted the statute of uses, and to guard against it by supplying the means of information, the registry act of Hen. 8, was passed, which provided that a conveyance by bargain and sale, should not pass the freehold unless made by indenture, and enrolled within six months.   Thus we plainly perceive the reason of the law.   It was to furnish a substitute for livery of seisin, which had been in effect, dispensed with, by the substitute of uses.   Registration furnished the means of information by proper diligence, and amounts to constructive notice, or notoriety, without which the conveyance was inoperative even between the parties.   The statute of 7 Ann, c. 20, went a step farther, by declaring the unregistered conveyance void as to subsequent purchasers and mortgagees, but valid as between the parties and their heirs. There is no exception in this act as to such as may have notice. The conveyance was void as against subsequent purchasers and mortgagees, either with or without notice.   It is not so with our act; it is declared void only in favor of subsequent purchasers

without notice. And now suppose that creditors are not affected by notice, or, in other words, that an unregistered conveyance is absolutely void as to them, either with or without notice of its existence, then they will stand on precisely the same ground with subsequent purchasers and mortgagees under the statute of Ann. If mortgagees with notice, were not within the meaning and intention of the English act, it must be equally apparent that " creditors," with notice of the prior conveyance, are not within the meaning and intention of our act. The construction which the English statutes have received, will, at least, furnish a very persuasive reason for adopting a similar one in this case. The leading decision in the English courts, is the case of *Leneve* v. *Leneve*, 3 Atkyns, 646, in which Lord Hardwick reviewed all the previous decisions on the same subject, and settled the construction of 7 Ann, c. 20, and 27 Hen. 8, c. 16. The contest was between two marriage settlements, one having been made upwards of twenty years before the other, but the oldest had not been registered. The attorney who drafted the latter, had notice of the existence of the former. It was held that this was notice to his principal, and that notice takes the case out of the statute, because then it is not within the mischief intended to be remedied. His Lordship declared that the acts were intended to screen innocent persons against prior secret conveyances and fraudulent incumbrances, and if a subsequent purchaser has notice of the existence of the prior conveyance, then it is not secret or fraudulent. That although the legal title, under such circumstances, passes to the subsequent purchaser, yet it shall not prevail against the superior equity of the first vendor, founded on the notice. That a subsequent purchaser is as much affected by notice, as though there had been livery of seisin. All subsequent decisions have conformed to this construction of the registry acts of England, and it is now regarded as the settled law.

The statute of Massachusetts is in substance the same as the English statutes, differing in no essential particular from our own, the only difference being that the Massachusetts act, like the statute of Ann, is silent as to the effect of notice, whilst ours

is not.  The supreme court of that State, by a uniform train of decisions, has adopted the same construction, holding that an unregistered deed is not void as against subsequent purchasers with notice, because they are not within the mischief intended to be prevented, notice being equivalent to registration.  2 Mass. Rep. 506.  4 Mass. Rep. 541.  Ib. 637.  14 Mass. Rep. 296.  The case of *Prescott* v. *Heard*, 10 Mass. Rep. 60, was the case of a creditor, and is, therefore, a direct authority in the present case, even on the supposition that our statute did not intend to affect creditors with notice.  The cases of *Brown* v. *Maine Bank*, 11 Mass. Rep. 153, and *Priest* v. *Rice*, 1 Pick. 164, are also directly in point, both involving the rights of creditors.

The New York registry act differs in one particular.  Unregistered deeds are void only as to subsequent purchasers, nothing being said as to the effect of notice.  As to all others it may be inferred that they are valid.  But as to purchasers the same construction has been given, notice being regarded as equivalent to registration.  That a purchaser with notice is not within the intention and reason of the law.  13 J. Rep. 471.  4 Wendell, 585.  6 Wendell, 213.  8 Wendell, 620.  11 Wendell, 442.  1 Paige, 127.  3 Paige, 421.  And a similar construction prevails in New Jersey.  1 Green's Rep. 43.

In Virginia the decisions seem to have fluctuated on a statute like ours.  The case of *Gibson* v. *Randolph*, 2 Munford, 310, is based upon the preceding construction, but the case of *Guerrant* v. *Anderson*, 4 Randolph, 208, adopts a different one, a distinction being taken between creditors and purchasers.  The decision is, to say the least, rather unsatisfactory.  The subject of the contest was not land, but personal property, and it was claimed not by an absolute deed, but by a mortgage, which, I believe in Virginia as here, takes effect only from the date of record; before that, it binds nothing, and yet it is evident the court construed the act as though the mortgage had been a deed.  The court is evidently wrong in saying that a court of equity never affected creditors with notice, and the error in this, shows a want of due consideration, and leaves the authority doubtful in all points.  A different doctrine is recognized and sanctioned

in *Beverly* v. *Brooks,* 2 Leigh's Rep. 425, and other decisions favor a similar construction.

This is also the rule in South Carolina, where the registry act is like that of Massachusetts, which, as already stated, does not materially differ from ours. 1 McCord, 265. 2 Ib. 152, 274. 1 Bailey, 315.

In Kentucky this has been the construction, and the question has lately received a very full adjudication in a case reported in 4 Dana, where the reasons and object of the act are reviewed at some length, and this interpretation given.

It must be useless to multiply authorities. Every State in the Union has a similar statute, and in every one a similar construction has been given. Chancellor Kent says, "it is a settled rule that if a subsequent purchaser or mortgagee, whose deed is registered, had notice at the time of making his contract, of the prior unregistered deed, he shall not avail himself of the priority of his registry to defeat it." 4 Kent, 169–70, 456–7. This covers the whole ground, for a mortgagee is but a creditor. He is not regarded as a purchaser, and hence the statute of Ann declared that unregistered conveyances should be void as to all subsequent *bona fide* purchasers and mortgagees. We cannot perceive any, even the most remote reason, for placing a general creditor in a more favored condition than a mortgage creditor. Justice would dictate the reverse. The general creditor contracts on a mere personal responsibility, whilst the mortgagee contracts on a specific lien, and may have nothing beyond it. It would be much fairer to give one the fruit of his specific lien, than to avoid all conveyances in favor of one who had no lien. The reasoning of the authorities shows that it was the policy and object of the law to protect those who might be injured by secret conveyances. It was not to prevent *bona fide* conveyances, which might be prejudicial in its consequences. Creditors may be injured by secret conveyances, but a knowledge of the conveyance enables them to guard against the mischief, and they are therefore not within the mischief intended to be guarded against when they have notice. Being equally as free from danger as subsequent purchasers are with notice, I conclude

that the legislature intended to place them both on the same ground. · This conclusion I think would be justified even on a fair construction of the first section, and certainly it is on the third, and the foregoing decisions certainly furnish conclusive reasons for adopting the third section as conveying the whole meaning of the legislature.   We cannot overlook the important fact, that in the legislation on this subject we have but followed in the track of Great Britain—that the statute of Ann declared unregistered deeds void in favor of creditors under the name of mortgagees—that the courts there and elsewhere held that such creditors with notice were not entitled to this protection, and that there was no design to change the rule.   So far as creditors are concerned, the reason of the law would seem to indicate a design to protect such as had given credit on the supposed owner-ship of property.   Carried to this extent it would be reasonable, but the statute uses the words "all creditors," without qualifi-cation or limitation.   It is difficult to reconcile this general mode of expression with the evident object in view, and hence it has been insisted that a " creditor" must be one who has a judgment or lien.   It is certainly true that an unregistered deed is not void as to general creditors.   There must be a judgment or lien before it can be regarded as void.   A general creditor has no lien on any particular thing; then at what point of time did the statute mean the credit should exist?   If it is to be extended to debts previously contracted, this leads to absurdity; for the debt may have been contracted long before the property con-veyed was owned by the debtor, and how could a secret convey-ance affect him more than a public one?   If it is to be extended to debts subsequently contracted through the whole life of the vendor, this also leads to absurd consequences.   The only per-ceivable reason for the enactment, confines it to those who have been induced to deal and give credit on the apparent ownership. In this light it would correspond with the statute of Ann, which protects mortgagees, the reason of which is apparent.   I do not deem it necessary, however, to determine who are creditors within the meaning of the statute; taking the term even in its most general sense, I am satisfied that the meaning of the stat-

ute is, that unregistered deeds shall not be avoided in favor of creditors with notice.

In the next place, it becomes necessary to inquire what will constitute notice, or the evidence of it. Notice that the owner has disposed of his property, is susceptible of proof like any other fact, by showing that the person to be affected, had actual knowledge of it by information or otherwise, or by circumstances from which he must have inferred such sale. Possession by the vendee, is evidence to creditors and purchasers of the conveyance; or, at least, is so strong a circumstance, that it is now uniformly regarded as sufficient evidence of notice. This rule results necessarily from the nature of the act, it being a substitute for livery of seisin. 10 Mass. Rep. 60. 6 Wendell, 213. 11 Wendell, 242. 3 Paige, 421. 10 Vermont Rep. 452. If we look at the reason for considering possession as notice, it would seem to limit the term "creditor" to such as had trusted on the faith of the ownership of the property; and that by crediting when their debtor was not in possession, they could not have calculated on that as a means of remuneration. It appears by the agreed case, that Campbell took possession when he purchased of Dixon, which was long before the debt was contracted. Shirley took possession when he purchased, and so did the plaintiffs in error when they purchased of him. Briggs, Lacoste & Co., the creditors, then had notice before they contracted with Dixon, that he had conveyed the lot in question. This placed them in the attitude of creditors with notice, against whom the statute has made an unregistered deed valid. But, besides this, it appears that the judgment creditor had actual notice of the conveyance before he recovered judgment. This would seem to be sufficient. As general creditor, he could not avoid the deed. It was valid until he could convert his debt into a lien; but before he can do that, he has notice of the conveyance. Under such circumstances, could the judgment become a lien? It is difficult to say that it could, unless we also assume that the debt itself was a lien. This is another difficulty growing out of the word "creditors." In looking back at the history of this enactment, it is probable that it was intended to protect mortga-

gees and creditors who had reduced their debts to judgment before conveyance—for judgments, at the date of the enactment, were not liens—or it may have been substituted for the word mortgagees in the English statute, without any very definite intention as to who would be embraced under it. But be this as it may, there can be no reason whatever for placing creditors on more favorable ground than subsequent purchasers. They are undoubtedly within the meaning and spirit of the law, and, consequently, within the exception. If the law was silent as to notice, as some of the statutes are, a court of chancery would regard the notice to a creditor as constituting such an equity as would entitle the holder of an unregistered deed to protection. It is difficult to suppose that this State alone intended to depart from a rule which had been adopted by all others, by giving protection to creditors in preference to *bona fide* purchasers. A mortgagee is a creditor, and if an unregistered deed be void as to all creditors, it must be void as to him. Suppose, then, the case of a subsequent purchaser with notice, and a subsequent mortgagee with notice; can it be that the law intended that the purchaser should take nothing by his deed, and yet that the mortgagee might enforce his mortgage? And if it be a fraud to purchase with a knowledge of a prior unregistered deed, is it any less a fraud to take a mortgage? Will the law in the one case say you purchased with a knowledge of the prior deed, you must lose your purchase money, for you intended a fraud on the rights of the prior purchaser? And will it at the same time say to the mortgagee, although you lent your money with a knowledge of the prior conveyance, and although by foreclosing the mortgage the original purchaser must lose his land, yet you must be protected and he must abide the consequences? Surely the law never was designed to work such injustice. The result to the first purchaser in the case supposed, is precisely the same as to the fraud. If it was a fraud to take the absolute deed, it must be a fraud to take the mortgage. But suppose it should be said that a mortgagee is something more than a creditor; that he occupies the attitude of a purchaser. If he is to be considered in this light, then notice destroys the validity

of his deed, but it does not destroy the debt which it was taken to secure. He may proceed by other means, and enforce his debt against property which another had purchased. That would make him a creditor as to his debt, but a purchaser as to his mortgage. The effect would be that he could not have his mortgage foreclosed; but he might sue at law, and levy his execution on the same property.

For the foregoing reasons, I am of the opinion that the court below should have rendered judgment for the defendants on the agreed case, and that the judgment ought to be reversed; and that this court should render the judgment which the court below should have given.

Mr. Justice TURNER. I concur in the above opinion.

Mr. Justice CLAYTON delivered the following dissenting opinion.

Having the misfortune in this case to differ from my associates, as to the construction of the registration laws of this State, I shall very briefly state the grounds of that difference.

When there is no ambiguity in the terms of a statute, there is, in my estimation, no room for interpretation. From a careful examination of the act as contained in How. & Hutch. p. 343, it is clear to my mind, that the question of notice or want of notice, was not intended by the legislature to be applicable to the case of creditors. The phraseology of our act is different from that of most other statutes, either in England or in this country, upon the subject. The first five sections speak of the consequence of a failure to record, the various instruments of conveyance required to be recorded. In the first section, an unrecorded conveyance is declared not to be good against a purchaser for valuable consideration not having notice thereof, or any creditor; in the second precisely the same words are used. In the third, it is declared, that they shall be void as to all creditors and subsequent purchasers for valuable consideration without notice; " but the same as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or with-

out valuable consideration, shall nevertheless be valid and binding." In the fourth, which relates entirely to personal property, it is said, " they shall be void in law, as to all purchasers thereof for valuable consideration without notice, and as to all creditors." The fifth section declares that all conveyances except deeds of trust and mortgages, unless lodged with the clerk to be recorded within three months from the time of their execution, and all deeds of trust and mortgages, shall take effect and be valid as to all subsequent purchasers for valuable consideration without notice, and as to all creditors' from the time when they are lodged with the clerk to be recorded.

In the language of these various sections, it is plain to my apprehension, that the legislature intended that the rights of creditors, when in conflict with an unrecorded deed, should be settled without reference to the point of notice or want of notice. In one part of the third section taken alone, the language might admit a different construction, and it might appear that the doctrine of notice was intended to apply as well to creditors as to purchasers. But this is explained by the subsequent part of the same section, which declares that the unrecorded conveyances " shall be valid as between the parties, and as to purchasers, with notice, or without valuable consideration," omitting creditors, and thus leaving the inference to my mind to be irresistible, that as to creditors they were not to be valid.

With this conviction that the intention of the legislature has been clearly expressed, the adjudications of other courts upon similar statutes, but couched in different terms, cannot induce me to yield my own conclusion. The English cases proceed upon equitable exceptions, which the courts permitted to prevail in the construction of this statute, as they likewise did in regard to the statutes of limitations and of frauds. Such equitable exceptions, when not made in the statute itself, according to my views, lie beyond the power of the court.

In Virginia, under a similar statute, it has been held that creditors are not affected by notice ; *Guerrant* v. *Anderson*, 4 Rand : though in that State, the decisions appear not to be uniform. A similar decision has been made in Tennessee, and in

some of the other States. *Washington* v. *The Banks* et al. Mar. & Yer. 54.

It is true that most of the other courts of the Union have decided differently, and if the language of our statute was less plain and explicit, I might be willing to surrender my own opinion to the authority of those decisions. But to my mind it admits of but one reading.

I shall content myself with this very general view of the subject, because a majority of the court have, after mature deliberation, come to a different conclusion. I say thus much only to show the grounds of my dissent, and that it has not grown out of a want of reflection on the subject.

NOTE. We would call the attention of the profession to the argument of Mr. Maury, published as an appendix, at the end of this volume, which was submitted to the court, and considered by them in this cause; and is published with the approbation of the court.