Sewall, C.. J.
(After stating the facts from the judge’s report.) The verdict is objected to upon the ground that the title in the demanded premises had not vested in the demandant at the time of the attachment made for the tenants. The title, it is argued, was then in W. Brown, notwithstanding the assignment of the judgment and execution ; because the release by William to Thomas, to confirm his title in the demanded premises, had not then been executed.
The assignment of a chose in action, when made bona fide, and for a valuable consideration, has been uniformly
* protected and carried into effect, according to the in- [ * 157 ] tentions of the parties. Several decisions of this Court might be cited to maintain this position. Among them, that iu *150 the action of Parker & Ux. vs. Grout & Al. (a) is one, where the rights of the party in interest were enforced against the claims of the nominal party, and against his attempt to release [ * 158 ] the debt which had been assigned. And with the * same effect, assignments have been enforced against the claims of the creditors of the- assignor; as where the party liable in the demand which had been assigned has been afterwards summoned as the trustee of the nominal creditor.
The Court see no essential difference in this case. After the assignment, supposing it bona fide, and made for a valuable consideration, the beneficial interest of W. Brown, in his judgment against Stephenson, was in T. Brown.
*151 The means necessarily resorted to, and the proceedings on the execution, to satisfy this judgment by a levy and extent of real estate, although conducted in the name of William, are to be considered, for every substantial purpose, as availing to the use and benefit ol' Thomas. The release subsequently executed by William may be considered as a requisite formality in the transfer of real estate — a requisite to the registered title, and in the forms of conveyance. But upon the evidence of notice to the agent of the tenants in this action, before their attachment was made, of the actual transfer of the judgment and execution, the Court are clearly of opinion that the tenants are not to avail themselves of the defect, merely formal and nominal, in the title of the demandant, that being afterwards supplied by a release.
A title by execution takes effect by relation from the time when the proceedings commence, if these are regularly continued, and if the extent is subsequently registered within the appointed time of three months from the completion of the levy, (a) The release, supposing it necessary to the formal title, is not, indeed, within this provision, as to the relation which the registry has to the commencement of the levy. But the tenants are concluded by the notice to them of the right and interest acquired to the demandant in the judgment and execution. A subsequent purchase from William, by any person affected with this notice of the inchoate title of Thomas, would have been void, as fraudulent against him. An execution or attachment by a creditor of William is within the same rule.
A title by an unregistered deed is not complete, and will not avail against all persons; but it will avail, if boná fide, *and for a valuable consideration, against a subsequent [ * 159 ] conveyance or transfer, whether by deed or attachment and execution, where the purchaser or creditor has had actual notice.
Whether the assignment in the case at bar was boná fide, and for a valuable consideration, might have been made a question upon the facts proved. This, however, was a question of fact to be left to the jury upon the evidence. That the debt, understood between William, and Thomas as a part of the consideration of the assignment, was not then released and discharged by Thomas, is a circumstance from which, if unexplained, a suspicion of trust and confidence might arise. The credit of several years, given upon the promissory note accepted in payment of the remaining part of the consideration, is another circumstance of the same import. The *152 inference of fraud, however, is to be made as a conclusion of fact, and not of law. The evidence ought to have been referred to the jury, if the tenants were not satisfied on this point. But a new trial is not moved for, nor is the objection to the verdict insisted upon on this ground.
If we give the demandant all the advantage of the judgment assigned to him, we must consider his title as taking effect by rela lion from the time of the attachment returned on the writ of TV. Brown against Stephenson. The consequence of this relation is, that the mortgage by Stephenson to Hale, under which the tenants also claim by virtue of Hale’s assignment to them, is necessarily postponed to the title of the demandant. The declared intention of Hale to obtain security of his demands against Stephenson, even if it had the supposed effect of suggesting to W. Brown the necessity of diligence on his part to secure his demands against Stephenson, is not to be regarded as notice of a legal title inchoate in Hale, but not completed. This intention of securing himself, if known to W. Brown, was no restraint upon him to prevent him from exercising his right as a creditor of Stephenson.
Upon the whole, the demandant’s title, acquired from his brother, TV. Brown, supposing the assignment bona fide, and f * 160 ] * for a valuable consideration, which seems not to have been questioned in the argument upon the case reported is, we think, the better title; and judgment is to be entered accord ing to the verdict, (a)

 Suffolk, Supreme Judicial Court, February term, 1803.
Jonathan Grout and Jonathan Grout, Jun., were attached to answer to Samuel Parker and Abigail, his wife, in a plea of the case for not paying their two several promissory notes, dated March 15, 1796, payable to the said Abigail, then sole, by the name of Abigail Hale, or her order.
The defendants pleaded in bar a release by the said Samuel to the said Jonathan Grout of all debts, &c., viz : On the 17th of March, 1800, the said Samuel having before that time, viz., on the 30th of October, 1796, intermarried with the said Abigail, and she being then his lawful wife, and made proferí of the said release.
The plaintiffs replied that, prior to the supposed execution and delivery of the said release, and prior to the intermarriage of the plaintiffs, viz., on the 39th of October, 1796, he, the said Samuel, did, in consideration of the said intended marriage, by a certain writing obligatory of that date, by him duly executed and delivered to one Thomas Hale, as trustee for the said Abigail, assign, &e., unto the said Thomas, in trust for the sole use and benefit of the said Abigail, during the time of the said intermarriage, and after her decease, for the use and benefit of her heirs, all the personal estate which the said Abigail then had, or might in any way have before the said marriage, or during the said intermarriage; — to have and to hold the same during their said intermarriage, for the sole use and benefit of her, the said Abigail; so that neither he, the said Samuel, nor his heirs, executors, &c., should receive, hold, use, or enjoy, any part of the personal estate of the said Abigail. And the said Samuel did, in and by the said writing obligatory, for the consideration aforesaid, among other things, covenant with the said Thomas, trustee as aforesaid, that, if said intended marriage should take effect, he would not, at any time during said intermarriage, take, dispose of, or convert to his own use, any of the personal estate of the said Abigail, which she then had or might have in her own right before said marriage, without the express and personal consent of her, the said Abigail, thereto first had and obtained; that he would not, at any time, &c., take or receive to his own use the payment of any debts or demands owing to her, the said Abigail, without her express and personal consent first had and obtained thereto ; and generally that the estate, both real and personal, of the said Abigail should not, during said intermarriage, be lessened or impaired by act of him, the said Samuel. The plaintiffs then aver that, in pursuance of the said agreement, and before the commencement of this action, and the supposed execution of the said release, the said marriage took place, viz., on, &c.; that the said several promissory notes were, prior to the said marriage, part of the personal estate of the said Abigail; that this action is instituted for the recovery of the payment thereof for her sole use and benefit; and that she never consented to the execution of the said release by the said Samuel, nor to the payment of the said notes to him. Of all which matters and things the defendants, prior to the supposed execution of the said release, zAz., on, &c., had severally due and personal notice. All which, &c., wherefore, &c.
To this replication the defendants, after oyer had of the said obligation, demurred generally; and tns plaintiffs joined in demurrer

Judgment for the plaintiffs.

 Heywood vs Hildreth, 9 Mass. Rep. 393. — Shove vs. Dow, 13 Mass. Rep. 529

 Alden vs. Holden, 9 Mass. Rep. 133. — Dunn vs. Snell & Al. 15 Mass. Rep. 481 Northampton Bank vs. Whiting, 12 Mass. Rep. 104.