## Jonathan B. Hall *vs.* David Crocker.

An execution was delivered to an officer, with directions to levy it on the judgment debtor's real estate : The officer, without entering on the land, immediately made a memorandum on a separate paper, (noting the day and hour,) that he then took the land in execution : He afterwards caused the land to be set off by appraisement, according to law, and dated his return on the execution as of the day and hour when he made said memorandum ; and set forth in the return that he then seized the land, &c. *Held,* that the return was not false, and that the levy took effect, by relation, from the time when such memorandum was made.

THIS was an action by the assignee of William Marstins, an insolvent debtor, against the sheriff of Barnstable, for a false return upon an execution. The case was submitted to the court upon the following facts agreed :

At a court of common pleas held at Barnstable, in September 1840, Samuel Fessenden and others recovered a judgment against said Marstins, upon which an execution duly issued. dated September 22d 1840. On the 29th of said September

at meridian, this execution was delivered to the defendant, with instructions to extend the same upon the real estate of the debtor, which was attached upon the writ. At the same time, the defendant made a memorandum upon a paper, that he then took in execution the lands of said Marstins ; but he made no minute upon the execution itself, nor any actual entry upon the land.

On the next day, September 30th, the defendant obtained the description of the real estate of said Marstins, at the registry of deeds, and on the 1st of October following, at meridian, gave notice to said Marstins of said seizure, and desired him to appoint an appraiser. At half past 3 o'clock P. M. of the same day, the defendant went upon the land, for the first time, and on the next day, October 2d, the levy was completed.

On the same 1st of October, the said Marstins petitioned the judge of probate, that a warrant should issue to a messenger to take charge of his estate, under the provisions of the insolvent law (*St.* 1838, *c.* 163). A warrant was then granted, and the first publication had on the same day, at half past 2 o'clock, P. M. The plaintiff was afterwards duly chosen assignee of said Marstins's estate.

The defendant made return, in due legal form, of the extent of said execution, and set forth in his return, that he seized, on the execution, the lands levied upon, " September 29th 1840, at twelve o'clock, M."

It was agreed that if the acts of the defendant, as above set forth, were sufficient in law to constitute a legal seizure of the land on execution, and so to prevent the operation of said publication the plaintiff should become nonsuit. But that, if an actual entry on the land, or a minute on the execution, was necessary for that purpose, the defendant should be defaulted, and damages be assessed, as the court should direct.

*Scudder,* for the plaintiff.

*Eliot,* for the defendant.

SHAW, C. J. The plaintiff sues as assignee of William Marstins, an insolvent debtor, under the insolvent act, *St.* 1838, *c.* 163 ; and the action is brought against the sheriff, for an alleged false return in the levy of an execution on the real estate of the insolvent.

By § 5 of said statute, the assignment, directed to be made, " shall vest in the assignees, all the property of the debtor, both real and personal, which he could have conveyed, or which might have been taken in execution, on any judgment against him, at the time of the first publication of the notice of the issuing of the warrant, although the same may be then attached on mesne process." The gravamen of the plaintiff's action is, that if the defendant had truly returned the facts in relation to the levy of the execution of Samuel Fessenden and others as judgment creditors against the said William Marstins, it would have appeared, that at the time of the first publication of the notice of the warrant, on said Marstins's insolvency, the defendant had made no legal or effectual seizure of the estate in question, so as to vest the same in the judgment creditors ; that by force of the statute, therefore, the estate ought to have passed to the plaintiff, as such assignee ; and by the untrue return of the defendant, that he had before taken and seized the said es tate on said execution, the plaintiff was damnified. This involves the question, what constitutes the act of seizing or taking real estate on execution by an officer, and how the moment of time is fixed, which devests the title of the debtor, and vests the estate in the creditor.

It seems to be a well settled rule, that the levy shall be con sidered as taking effect, by relation, from the time when the legal proceedings for making the levy of execution commence, if followed up seasonably by a compliance with the requisites of the law. *Heywood* v. *Hildreth*, 9 Mass. 393. *Brown* v. *Maine Bank*, 11 Mass. 153. *Waterhouse* v. *Waite*, 11 Mass. 207. Still the question recurs, what is the commencement of those proceedings, on the part of the officer ? It was argued, on the part of the plaintiff, that the estate should not be considered as taken, until the officer shall have made an entry. But it was decided, many years since, that an entry was not necessary. It is sufficient for the officer and the appraisers to view the land ; and that is required only for the purpose of making a just esti mate of its value. *Bond* v. *Bond*, 2 Pick. 382. *Hammatt* v. *Bassett*, 2 Pick, 564. The direction, in Rev. Sts. *c.* 73, § 4,

is, that the appraisers shall proceed with the officer to view and examine the land. This is the only provision that requires any act in the nature of an entry ; and this presupposes that the appraisers have been appointed and sworn ; but the form of the prescribed oath is, that they will "impartially appraise such real estate as shall be shown to them *as taken* by force of the execu·tion."

We are aware that it has been held in Maine, that the extent of an execution cannot be considered as commenced, until the appraisers are sworn ; and a doubt is expressed, in the same case, whether they can legally be considered as commenced, until the land is shown to the appraisers. *Allen* v. *Portland Stage Co.* 8 Greenl. 207. Possibly·the decision in that case may have been influenced by the special provisions of the revised statutes of Maine, which may differ in phraseology from the Massachusetts acts. But whether there be any difference or not, we cannot yield to the authority of that case. In case of land lying at a distance from the officer and appraisers, as it may in a large county, ample time would be allowed, where there was no previous attachment on mesne process, for the debtor to convey the estate to a favored creditor, or for other creditors to make attachments on mesne process, which may be done without entering on, or viewing the land. After notice to the debtor to choose an appraiser, and during the reasonable time allowed him for that purpose, he may convey away all his real estate, to more favored creditors, and defeat the right of the judgment creditor. Nor does the reasoning, on which that decision is founded, appear to us to be conclusive. It is stated that the causing of the appraisers to be sworn shall be consider·ed as the commencement of the levy, because that is the first official act, required by the statute to be done by the officer, in extending an execution upon real estate. The act of the officer, in appointing an appraiser on his own part, and giving him notice of his appointment, receiving notice of the appointment of a disinterested person on the part of the creditor, and, especially, giving notice to the debtor to appoint an appraiser, are essential acts, and must necessarily precede the act of causing the ap-

praisers to be sworn ; and they are official, because they are under the authority of the execution, and would be inoperative and void, if done before the officer had received the execution, and had directions from the creditor to levy it on real estate.

But in Massachusetts, we think this question is put at rest by the Rev. Sts. *c*. 73, § 22, which in terms direct that the officer, *after taking* the land in execution, shall give notice thereof to the debtor, &c. and the levy shall be considered as made, at the time when the land is taken ; and the subsequent proceedings and the officer's return shall be valid, though done after the return day, or after the removal of the officer.

It is clear from this provision, that the land is deemed legally taken, so as to fix the time at which the levy shall be consider ed as made, before notice to the debtor to appoint an appraiser, and of course before the appraisers can be sworn.

By Rev. Sts. *c*. 97, § 34, it is provided, that when any real estate is seized on execution, and the further service of the execution is suspended by reason of any prior attachment, the estate shall remain bound by such seizure, until it is set off, &c. This provision also implies that the estate may be seized, so as to fix the time of the levy, and yet that the further service of the execution may be suspended ; and of course that a seizure may be made by some act independent of those subsequent proceedings. * For the purposes of the present case, it appears to us very clear, that the act of the officer, in giving notice to the debtor to choose an appraiser, must be deemed a good beginning of the service of the execution. This being done on the 30th of September, was done before the application of the debtor to the judge of probate, and would therefore defeat the right of the assignee. In such case, even if the return were not strictly true in stating that the officer seized the estate on the 29th, the plaintiff would not show that he had lost any thing by such false return, and therefore if he could maintain an action, which is very doubtful, as he would in that case be a mere stranger, he could only recover nominal damages. But the

* See *Hall* v. *Hoxie*, (*post.* 251.)

statute having fixed upon no specific act, which will constitute the seizure of land on execution, the court are of cpinion, that when an execution has been delivered to an officer, with directions to levy the same on the real estate of the debtor, and the officer accepts the execution with such directions, and consents and undertakes to execute it ; any act, done by him, in pursuance of that purpose, is a beginning to execute it, and constitutes a seizure ; and the making of a memorandum, which enables him to fix the date of such act, and make his return, is sufficient for this purpose.

We do not mean to say that the delivery of an execution to an officer, with a designation of the lands to be taken, and his undertaking to execute it as directed, if he afterwards makes return that he then took the land in execution, will not be sufficient to bind the land, as from that time, if followed up by the other required proceedings, without any memorandum or other open and visible act. That question may well be reserved until it arises. It is not necessary to decide it in this case, because it appears that a memorandum was made at the time of receiving the execution, and though not made on the execution, yet it was an act indicating a determination from that time to *take* the estate, and sufficient to aid him in making his return.

We do not think there is much weight in the objection to this view, that it would be in the power of an officer to commit a fraud by antedating his return. It would be always in the power of the officer to commit such a fraud, by stating any other fact, contrary to the truth, either on an execution, or attachment on mesne process. Whatever act is required by law, the officer may falsely certify that he has done such act.

In the present case, it appears that the execution was issued September 22d 1840, and was delivered to the sheriff on the 29th of the same month, at noon, with instructions to extend the same on the real estate of the debtor, attached on the writ. This sufficiently designated and identified the estate to be taken. *Id certum est, quod certum reddi potest.* It further appears that at the same time the sheriff made a memorandum upon a paper, stating that he *then* took in execution the lands of said Marstins ;

but he made no minute upon the execution itself, nor any actual entry on the land. We think that in the absence of any express provision of law, requiring a memorandum on the execution, a memorandum on a register or official journal kept by the officer, or on a separate piece of paper, is equally availing as a memorandum on the writ. It equally accomplishes the purpose of aiding the officer to make a true return ; but after all, it is the return alone which must govern. It could not be aided by a separate memorandum, and the officer must make a true return, on his official responsibility. The court are therefore of opinion, that the acts, which were in fact done by the officer on the 29th of September, did constitute a beginning of the service of the execution, and a seizure of the land at that time ; that all the after proceedings relate to that time ; that by force of the statute, the estate vested in the creditor, by relation, as of that time ; and that therefore there was no falsity in the return of the defendant, in stating that he then took the estate in execution.

*Plaintiff nonsuit*