KLEIN, J.
This is an appeal and cross-appeal from a judgment dissolving the marriage of the Kellers. We affirm all issues except for *545 the denial of attorney’s fees to Mr. Keller for trust litigation.
The final judgment and order on rehearing made the following findings. Mr. Keller, a fifty-six year old wealthy resident of Palm Beach, placed a personal advertisement in a German newspaper in 1992, seeking a young, attractive female companion. Rose, who was about twenty-two, responded, and after some correspondence, came to Florida. After signing an antenuptial agreement, they married in August, 1992, and their one child, Fred, was born in 1995.
The trial court found that after the first few years of the marriage, which were harmonious, financial issues created conflict. Mrs. Keller demanded that she be made a one-half owner of her husband’s assets, which were primarily real estate, and Mr. Keller purported to make changes she requested, the validity of which made up many of the issues at trial and in this appeal. In the final judgment the court found in favor of Mrs. Keller on the transfers made during the marriage. After the entry of the final judgment, but before motions for rehearing were determined, Mrs. Keller was shot to death and Mr. Keller was charged with her murder and other crimes. The charges have not been resolved.
During the marriage, Mr. Keller represented that he was increasing his wife’s interests in their real estate holdings, which were held in trusts, and it is the court’s findings in favor of Mrs. Keller which are the basis of most of the issues raised by Mr. Keller. The trusts, which were numerous, were identified by numbers. Land Trust No. 1, with Mr. Keller as trustee, and both of the Kellers guaranteeing a promissory note, acquired acreage in Virginia in 1997. Mr. Keller argued that Mrs. Keller had no interest in this property because the trust instrument itself had not been signed by the Kellers. The court found, however, that the failure of the parties to sign that particular document was a mere oversight. The parties were equally liable for the debt on the property, and the unsigned trust instrument was filed in a file containing all of the other signed trust instruments. Mr. Keller testified that he had deliberately not signed the trust document because he had changed his mind, but the court found his testimony not credible. The court properly considered all of the other documents relating to the transaction, Cavallaro v. Stratford Homes, Inc., 784 So.2d 619 (Fla. 5th DCA 2001), Cook v. Theme Park Ventures, 638 So.2d 468 (Fla. 5th DCA 1994), and the finding that the trust was created is supported by the evidence.
Another parcel acquired during the marriage was temporarily held by a corporation until environmental problems were resolved, with the intent that it then be placed into a trust in which the parties were equal beneficiaries. The corporation controlled by Mr. Keller did not convey the property to the trust; however, the court established a constructive trust based on unjust enrichment, because joint funds or joint debt were used to acquire and manage the property. There was ample evidence that Mr. Keller had intended to transfer the property to a trust and the court again found his explanation not credible. We find no error. Quinn v. Phipps, 93 Fla. 805, 814, 113 So. 419 (1927) (“[A] court of equity will raise a constructive trust and compel restoration where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold.”).
Another issue involves a number of other trusts which are factually similar. *546 In 1999, at a time when Mrs. Keller was a minority beneficiary of the trusts, Mr. Keller, at her request, made written changes on each trust document to reflect that she had a fifty percent beneficial ownership interest. He testified in the dissolution proceeding that he had deliberately not followed through on certain formalities required by the trust instruments regarding the altering of the beneficial ownership interests. Again, his testimony, which was in conflict with his written changes on the trust instruments, was found not credible. There was ample evidence to support the trial court’s conclusion that Mr. Keller was estopped from raising the technical deficiencies, which included the fact that Mrs. Keller was equally jointly liable on the indebtedness on most, if not all of these properties. Cotten v. Williams, 1 Fla. 37, 54 (Fla.1846) (“No man can avoid his own deed by which an estate has passed, on account of his own fraud in executing it.”). For the same reasons we conclude that the court did not err with the La Puerta Way property, or the Pike Road property.
We have considered the other issues raised by Mr. Keller and find them to be without merit except for one, the denial of his request for attorney’s fees from the beneficiaries for litigation relating to the trusts. The trust agreements provide for unconditional reimbursement of attorney’s fees if the trustee participates in litigation for any reason, and Mrs. Keller has provided us with no argument as to why that provision is not enforceable. We affirm, however, the ruling that Mr. Keller could not remain as the sole trustee of the land trusts.
On cross-appeal the estate argues that the court erred in enforcing the ante-nuptial agreement, because there had been a modification by the parties. Although the court did err in concluding that the contract could not be modified as it was a contract under seal, Carpenter v. Florida Cent. Credit Union, 369 So.2d 935, 936 (Fla.1979) (“The common law significance accorded sealed instruments was long ago abrogated by statute in Florida.”), the court also found, as a matter of fact, that there had been no modification of the ante-nuptial agreement. That finding is supported by the evidence. The error in holding that it was a contract under seal was accordingly harmless. The estate’s remaining arguments as to the antenuptial agreement, including attorney’s fees and costs, are without merit.

Affirmed in part and reversed in part.

POLEN and MAY, JJ., concur.